IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHASE PARTHÉ, #M26733, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 21-0076-SPM |
| ) | |
| CHRISTOPHER THOMPSON, ) | |
| LT. MOMBAR, DR. MEYERS, ) | |
| MS. DEBARD, DR. LANG, ) | |
| LONG (R.N.), and ) | |
| WEXFORD HEALTH SOURCE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Chase Parthé filed this civil action pursuant to 42 U.S.C. § 1983 while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") of the Illinois Department of Corrections ("IDOC"). He has since been released from custody. (Doc. 14). Plaintiff alleges that Defendants violated his constitutional rights by failing to renew his prescriptions, which caused him to suffer a seizure and related injuries. He seeks monetary damages. (Doc. 1).

This Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff makes the following allegations in his Complaint (Doc. 1): On October 23, 2019,

Plaintiff was transferred from Western Illinois Correctional Center ("Western") to Pinckneyville. (Doc. 1, p. 7). At Western, he had been on prescription Neurodin for his epilepsy and chronic back pain, and on Abilify for bipolar disorder. At Pinckneyville, Plaintiff was not issued Abilify, and on November 6, 2019, his Neurodin ran out. He filed sick call requests and an emergency grievance asking to be provided with his anti-convulsant medication.

On November 9, 2019, Plaintiff was taken by Lt. Mombar[1] to see Nurse Long about these two prescriptions. She told him that Neurodin was not prescribed at Pinckneyville and she would look into the matter. Plaintiff explained he was experiencing pre-seizure symptoms. Long confirmed Plaintiff has a low bunk permit but did not give him any medication. (Doc. 1, p. 7).

After this encounter on November 9, 2019, Lt. Mombar "harassed" Plaintiff about not participating in cell moves. Plaintiff explained that he refused to move from his cell so that he would not risk losing his bottom bunk, but he did not object to being assigned a cellmate. Mombar told Plaintiff that if he agreed to move, Mombar would make sure the medication mix-up got resolved, but Plaintiff still declined a move. Mombar's "harassment" continued, and Plaintiff filed a grievance over his attempt to "bribe" him and the "atmosphere of retaliation" he created implying that cooperating with a move would be the only way his medication would be returned. (Doc. 1, pp. 7, 10).

On November 11, 2019, still without any seizure medication, Plaintiff awoke to find he had a bad cut on his forehead, was very dizzy, felt sick, and had urinated on himself, which led him to conclude he had suffered a seizure. (Doc. 1, pp. 7-8). An officer obtained a wheelchair and

---

[1] Plaintiff spells the name as "Mombar" in the case caption (Doc. 1, pp. 1, 2) but spells the name as "Mumbar" in the body of the Complaint. (Doc. 1, pp. 7, 10). The Court will use the spelling in the caption.

took Plaintiff to the health care unit where an unknown male nurse[2] treated the gash on his forehead. This nurse did not run any tests or otherwise address Plaintiff's seizure, headache, or dizziness, but informed him that he was scheduled to see the nurse practitioner for a November 5, 2019 sick call complaint about a rash. The nurse suggested Plaintiff ask about his medications at that time. (Doc. 1, p. 8).

When Plaintiff returned to his cell, Lt. Pettijean (who is not a Defendant) would not allow Plaintiff to take a shower even though he still smelled of urine from the seizure and failed to issue Plaintiff any cleaning supplies for his cell. (Doc. 1, p. 8).

Later in the evening of November 11, 2019, another nurse made medication rounds to the cells and issued Plaintiff an anti-convulsant pill.

On November 12, 2019, Plaintiff had his visit with the nurse practitioner (B. Blum, who is not a Defendant), who argued with Plaintiff about his epilepsy medications and said he was only being seen for the skin rash (he was running out of prescribed cream for that condition) and not for his November 9, 2019 sick call request regarding the lapsed prescriptions. Blum refused to give Plaintiff any medication for his seizures, bipolar disorder, or for the rash. (Doc. 1, p. 9). The rash continued to get worse. (Doc. 1, p. 10). Plaintiff filed another emergency grievance which the Chief Administrative Officer deemed an emergency.

On or about November 18, 2019, Plaintiff was finally seen by mental health provider Ms. Debard.[3] She informed Plaintiff his medical records contained nothing about his bipolar diagnosis or Abilify prescription, and she disbelieved his explanation that he had been on medication for his

---

[2] In addition to this unknown nurse, Plaintiff's statement of claim identifies several other individuals who are not included as Defendants in the action, thus the Court will not consider them to be parties in this case. (Doc. 1, pp. 7-10).
[3] Plaintiff spells this Defendant's name as "Debor" in the body of his Complaint (Doc. 1, pp. 9-10); the Court will use the spelling set forth in the case caption and description of Defendants. (Doc. 1, pp. 1-2).

symptoms all his life. (Doc. 1, p. 9). Debard said she would contact staff at Western about Plaintiff's history. Plaintiff filed a grievance over this encounter.

On November 25, 2019, Plaintiff saw Debard again. She had confirmed Plaintiff's bipolar diagnosis but decided to prescribe him 200 mg. of Zoloft along with Tegretol, instead of Abilify. (Doc. 1, p. 10). Plaintiff notes that as of the date he filed his Complaint in January 2021, he had not yet received the Tegretol. He further complains that the responses to his grievances contained inaccuracies about his medication history at Western as well as his treatment at Pinckneyville. *Id.*

### DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious medical needs claim against Nurse Long for failing to replace Plaintiff's anti-seizure medication, which caused him to suffer a seizure and physical injury on November 11, 2019. |
| Count 2: | Eighth Amendment deliberate indifference to serious medical needs claim against Ms. Debard for failing to renew Plaintiff's Abilify medication for bipolar disorder and then failing to timely provide him with replacement medications (Zoloft and Tegretol). |
| Count 3: | First Amendment retaliation claim against Lt. Mombar for harassing Plaintiff over his refusal to move to a different cell. |
| Count 4: | Eighth Amendment deliberate indifference to serious medical needs claim for the failure to renew Plaintiff's medication to treat a rash. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[4]

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**PRELIMINARY DISMISSALS**

The Complaint suggests that Plaintiff may be attempting to assert claims against some individuals who are not named as Defendants in the case caption; for example, nurse practitioner Blum. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Conversely, Plaintiff includes Warden Christopher Thompson, Dr. Meyers, Dr. Lang, and Wexford Health Source, Inc., as named Defendants, but he fails to mention them at all in his statement of claim and does not describe what they allegedly did to violate his constitutional rights. (Doc. 1, pp. 1-2, 7-10). Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). A plaintiff is required to associate specific defendants with specific claims so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under FED. R. CIV. P. 8 if it notifies the defendant of the principal events upon which the claims are based). Plaintiff has not articulated any claim against Thompson, Meyers, Lang, or Wexford Health Source, Inc., therefore these Defendants will be dismissed from the action without prejudice.

**Count 1**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical

needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against Nurse Long, who failed to give Plaintiff any anti-seizure medication on November 9, 2019, despite being informed that his prescriptions had run out and he was experiencing pre-seizure symptoms. Plaintiff had a seizure two days later.

The facts outlined in the Complaint do not connect any other Defendant with the failure to provide Plaintiff with epilepsy medication before he suffered the seizure. Additionally, it appears that Plaintiff is attempting to seek damages from Wexford Health Source, Inc., ("Wexford"), based on the alleged misconduct of Long and other medical providers. (Doc. 1, p. 2). Wexford is a corporation that employs the medical-provider Defendants and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff fails to mention Wexford at all in his statement of claim and does not set forth any facts to indicate that a Wexford policy caused any individual medical provider to act with deliberate indifference to Plaintiff's medical conditions.

Count 1 will proceed for further consideration against Nurse Long only.

## Count 2

After some delay, mental health provider Debard prescribed Zoloft and Tegretol to Plaintiff for his epilepsy and bipolar disorder. However, Plaintiff asserts that he never received the Tegretol medication and went without it for approximately two months and possibly longer. A delay in providing necessary medical treatment may amount to deliberate indifference if it resulted in unnecessary suffering. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004). At this early stage, the claim in Count 2 against Debard will proceed.

The Court notes, however, that the decision to prescribe a different medication from what Plaintiff was given at his previous prison does not in itself amount to deliberate indifference, as it merely indicates a difference of opinion between medical professionals. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

## Count 3

Plaintiff accuses Lt. Mombar of creating an "atmosphere of retaliation" by "harassing" Plaintiff over his refusal to accept a move to a different cell and attempting to "bribe" Plaintiff to move by stating that Mombar would make sure the medication problem was fixed if Plaintiff would move. That conversation took place after Plaintiff returned from his visit to Nurse Long. Plaintiff filed a grievance against Mombar. (Doc. 1, p. 7).

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the

retaliatory action. *See McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Here, Plaintiff does not point to any adverse *action* taken against him by Mombar that would amount to retaliation. Plaintiff endured verbal pressure from Mombar to move cells, but Plaintiff stayed put. He does not claim that Mombar took any retaliatory action against him for that decision or for Plaintiff's subsequent filing of a grievance. The facts surrounding Plaintiff's attempts to get his medications restored do not suggest that Mombar played any role in the delay or the action/inaction of Long and Debard regarding Plaintiff's prescriptions. Therefore, the Court cannot discern any basis for Plaintiff to maintain a retaliation claim against Mombar. Count 3 and Defendant Mombar will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 4

Plaintiff asserts that his skin rash condition became worse after nurse practitioner Blum failed to renew his prescription for the cream he had been using. (Doc. 1, pp. 9-10). However, Plaintiff did not include Blum as a Defendant in this case, nor did he indicate that any other Defendant was responsible for the discontinuation of his treatment for the rash. Accordingly, Count 4 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### DISPOSITION

The Complaint states colorable deliberate indifference claims in Count 1 against Long and in Count 2 against Debard. Counts 3 and 4 are **DISMISSED** without prejudice. Defendants Christopher Thompson, Lt. Mombar, Dr. Meyers, Dr. Lang, and Wexford Health Source, Inc. are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for Ms. Debard and Nurse Long: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  April 14, 2022**

*s/  Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.